HOGAN LOVELLS US LLP
Richard L. Stone (Bar No. 110022)
richard.stone@hoganlovells.com
Amy M. Gallegos (Bar No. 211379)
amy.gallegos@hoganlovells.com
Asheley G. Dean (Bar No. 245504)
asheley.dean@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California  90067
Telephone:     (310) 785-4600
Facsimile:      (310) 785-4601

Attorneys for Defendant
Midland Funding, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christopher Robinson, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>Midland Funding, LLC,<br><br>Defendant. | Case No.  10 CV 2261 MMA AJB<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT MIDLAND FUNDING, LLC'S MOTION TO DISMISS OR STAY ON PRIMARY JURISDICTION GROUNDS OR, IN THE ALTERNATIVE, TO DISMISS UNDER F.R.C.P 12 (b)(6)**<br><br>Date:           February 7, 2011<br>Time:          2:30 p.m.<br>Courtroom:  5<br><br>Judge:          Hon. Michael M. Anello |

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

REPLY IN SUPPORT OF MOTION TO
DISMISS OR STAY
No. 10 CV 2261 MMA AJB

\\\LA - 036745/000011 - 482836 v1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

II. THE COURT SHOULD DISMISS OR STAY THIS CASE PENDING THE RESOLUTION OF THE CURRENT FCC RULEMAKING PROCEEDING ................ 3

    A. Plaintiff's Complaint Raises Issues That Will Very Likely Be Addressed By The FCC In Connection With The Pending NPRM ......................................... 3

    B. This Is The Type Of Case Which Courts Regularly Stay Or Dismiss On Primary Jurisdiction Grounds ................................................................. 5

III. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED UNDER FRCP 12 (b)(6) .... 9

IV. CONCLUSION ................................................................................................... 10

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

i

REPLY IN SUPPORT OF MOTION TO DISMISS OR STAY
No. 10 CV 2261 MMA AJB

\\\LA - 036745/000011 - 482836 v1

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abbas v. Selling Source, LLC,*
   2009 WL 4884471 (N.D. Ill. 2009) ................................................................................. 9, 10

*American Mining Congress v. EPA,*
   965 F.2d 759 (9th Cir. 1992) ............................................................................................ 2, 4

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ................................................................................................... 9, 10

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ....................................................................................................... 9, 10

*Brown v. Hosto & Buchanan, PLLC,*
   2010 WL 4352932 (W.D. Tenn. 2010) ................................................................................ 10

*Charvat v. Echostar Satellite, LLC,*
   -- F.3d --, 2010 WL 5392875 (6th Cir., Dec. 30, 2010) ............................................. 2, 6, 7, 8

*Clark v. Time Warner Cable,*
   523 F.3d 1110 (9th Cir. 2008) ...................................................................................... 5, 6, 8

*Kappelman v. Delta Airlines, Inc.,*
   539 F.2d 165 (D.C. Cir. 1976) ...................................................................................... 5, 6, 8

*Kazemi v. Payless Shoesource, Inc.,*
   2010 WL 963225 (N.D. Cal. 2010) ..................................................................................... 10

*Kramer v. Autobytel, Inc.,*
   2010 WL 5463116 (N.D. Cal. 2010) ................................................................................... 10

*Michal Communications, Inc. v. Sprint Telemedia, Inc.,*
   1 F.3d 1031 (10th Cir. 1993) ................................................................................................ 8

*Navistar Int'l Transp. Corp. v. U.S. E.P.A.,*
   941 F.2d 1339 (6th Cir. 1991) ............................................................................................... 4

*Reyes v. Saxon Mortgage Services, Inc.,*
   2009 WL 3738177 (S.D. Cal. 2009) .................................................................................... 10

*Southern New England Telephone Co. v. Global NAPS, Inc.,*
   2005 WL 2789323 (D. Conn. 2005) ................................................................................... 5, 8

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- ii -

REPLY IN SUPPORT OF MOTION TO DISMISS OR STAY
No. 10 CV 2261 MMA AJB

\\\LA - 036745/000011 - 482836 v1

*Southwestern Bell Telephone L.P. v. Vartec Telecom, Inc.*,
    2005 WL 2033416 (E.D. Mo. 2005) .................................................................................... 5, 8

*Waudby v. Verizon Wireless Services, LLC*,
    2007 WL 1560295 (D. N.J. 2007) ........................................................................................ 4, 8

**STATUTES**

5 U.S.C. § 551(4) ............................................................................................................................ 5

15 U.S.C. § 1692 ............................................................................................................................ 7

47 U.S.C. § 151 .............................................................................................................................. 8

47 U.S.C. § 227 .............................................................................................................................. 8

47 U.S.C. § 227(a)(1) ..................................................................................................................... 2

F.R.C.P. 12(b)(6) .......................................................................................................................... 10

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

\\\LA - 036745/000011 - 482836 v1

- iii -

REPLY IN SUPPORT OF MOTION TO
DISMISS OR STAY
No. 10 CV 2261 MMA AJB

## I. INTRODUCTION

The Court should dismiss or stay this litigation pending FCC resolution of issues that are central to this case – namely the applicability of the Telephone Consumer Protection Act ("TCPA") to debt collection calls, and whether predictive dialers of the type used by debt collectors are "automatic telephone dialing systems" as defined by the TCPA. If this case proceeds while the FCC is considering these issues, there is a risk that this Court may issue rulings that are inconsistent with the FCC's ultimate decision. For example, this Court may rule that the equipment Midland uses to call delinquent debtors, such as Plaintiff, falls within the TCPA's definition of "automatic telephone dialing system" while the FCC may decide that this same type of equipment does <u>not</u> fall within the statute. Plaintiff's insistence on pushing forward with this case despite this risk is premised on fundamental misconceptions about the issues currently before the FCC, the primary jurisdiction doctrine, and regulatory processes in general.

First, Plaintiff contends that there is no risk of inconsistent results because the proposed rule that the FCC announced only involves a requirement that the consumer provide express written consent for automated, prerecorded calls, and the issues that would bear on this case are not expressly within the four corners of the Notice of Proposed Rulemaking (NPRM). However, as explained in Midland's motion – and not rebutted by Plaintiff's opposition – the proposed new consent rule is inextricably linked to broader questions about the scope of the TCPA and the question of whether automated dialing systems used by debt collectors and other non-telemarketing businesses should fall within the statute. This is because the proposed new consent rule, if adopted, would severely curtail the ability of debt collectors and other businesses, such as retailers and financial institutions, to use automatic dialing technology to contact consumers. As a result, a wide array of interested parties, including eleven members of Congress and several federal agencies, filed formal comments in response to the NPRM. These comments urged the FCC to revise its interpretation of "automatic telephone dialing system" so as to exclude predictive dialers – a type of technology used by debt collectors and other businesses to dial preprogrammed numbers, not random or sequentially generated numbers – from the TCPA's

Hogan Lovells US LLP
Attorneys At Law
Los Angeles

\\\LA - 036745/000011 - 482836 v1

- 1 -

REPLY IN SUPPORT OF MOTION TO DISMISS OR STAY
No. 10 CV 2261 MMA AJB

\\\LA - 036745/000011 - 482836 v1

1  restrictions on autodialed calls.[1]  Because the FCC must address these comments when it acts

2  upon the NPRM, these issues are squarely within the scope of the pending rulemaking

3  proceeding.[2]

4       Second, Plaintiff contends that the primary jurisdiction doctrine does not apply here

5  because there is no issue of first impression.  However, TCPA law is not as settled as Plaintiff

6  pretends and, in any event, even Plaintiff is forced to acknowledge that an issue of first

7  impression is not required.  To the contrary, primary jurisdiction is a flexible doctrine that allows

8  a court to dismiss or stay a case rather than rule on a complex issue that Congress has committed

9  to a regulatory agency.   This is such a case.  Congress has charged the FCC with interpreting the

10  TCPA, and questions about the types of businesses and types of technology that should fall within

11  the TCPA's scope require both technical expertise (*i.e.*, an understanding of the functionality of

12  various types of automated dialing systems) and policymaking expertise, especially in light of the

13  large number of industries that would be potentially affected by a ruling on these issues.  Indeed,

14  just last month, the Sixth Circuit Court of Appeal invoked the primary jurisdiction doctrine and

15  referred to the FCC a question of statutory interpretation arising under the TCPA, noting that the

16  FCC had the authority and expertise to interpret the TCPA, and explaining that deferring to the

17  agency would promote uniformity and regulatory certainty.[3]

18       Third, Plaintiff contends that a stay of this action pending the FCC's resolution of the

19  NPRM would be "impractical" and "unrealistic," and hypothesizes a string of absurd scenarios

20  (*e.g.*, "Would this go on for decades?  Would the parties have to wait until all future regulations

21  have finally been passed, and all laws are cast in stone?").  In fact, the NPRM was issued over a

22  year ago and the comment period closed nine months ago.[4]  It is highly likely that the FCC will

---

[1] The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

[2] *See, e.g., American Mining Congress v. EPA*, 965 F.2d 759, 771 (9th Cir. 1992) (federal regulatory agencies are required to address "significant comments," *i.e.*, "those which raise relevant points and which, if adopted, would require a change in the agency's proposed rule," in connection with their rulemaking activities).

[3] *Charvat v. Echostar Satellite, LLC*, -- F.3d --, 2010 WL 5392875 (6th Cir., Dec. 30, 2010).

[4] *See* RJN, Ex. 1, p. 1 (NPRM adopted on January 20, 2010; Comment Date:  60 days after date of publication in Federal Register; Reply Date:  30 days after Comment Date).

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

REPLY IN SUPPORT OF MOTION TO DISMISS OR STAY
No. 10 CV 2261 MMA AJB

\\\LA - 036745/000011 - 482836 v1

1  rule on the NPRM this year.  Given that Plaintiff has filed a nationwide class action seeking
2  substantial damages, in which he envisions experts being engaged to examine Midland's system
3  and determine whether it falls within the statutory definition of "automatic telephone dialing
4  system," the most efficient course is to stay this case until the FCC provides guidance on this key
5  issue.  This will prevent the risk of a court ruling that is inconsistent with the FCC's decision, and
6  the concomitant risk of further regulatory uncertainty on this issue.

7      In the alternative, if the Court elects to proceed with this case, Midland requests that the
8  Court dismiss the complaint for failure to state a claim, since Plaintiff has failed to plead basic
9  facts about the calls it alleges Midland made in violation of the TPCA.  This is not a mere
10 pleading technicality.  Midland has over 200 "Christopher Robinsons" in its system and no record
11 of ever having called the cell phone number provided by Plaintiff's counsel.  Plaintiff's counsel
12 has been unable to informally provide information that would allow Midland to verify that it
13 called Plaintiff – if indeed it did so.  Without more detailed information, Midland cannot
14 investigate and respond to the complaint.  Accordingly, for the reasons discussed herein, Midland
15 respectfully requests an order dismissing or staying this action pending the FCC's resolution of
16 the NPRM, or, in the alternative, dismissing the action for failure to state a claim.

17 **II.**     **THE COURT SHOULD DISMISS OR STAY THIS CASE PENDING THE RESOLUTION OF THE CURRENT FCC RULEMAKING PROCEEDING**
18
19     **A.**  **Plaintiff's Complaint Raises Issues That Will Very Likely Be Addressed By The FCC In Connection With The Pending NPRM**

20 As Plaintiff repeatedly admits, resolution of this case will require the Court to determine
21 whether predictive dialers, such as those used by debt collectors, are "automatic telephone dialing
22 systems" pursuant to the TCPA.  *See, e.g.,* Plaintiff's Opposition to Motion to Dismiss or Stay
23 ("Opp."), pp. 4:24-28; 5:21-23; 6:12-14.  Despite Plaintiff's protestations to the contrary, the FCC
24 is very likely to address this issue when it acts on the NPRM.
25 As explained in Midland's brief in support of its motion, the NPRM announced the FCC's
26 plans to, among other things, require sellers and telemarketers to obtain express written consent
27 from consumers prior to making automated calls – even where there was an established business
28

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

REPLY IN SUPPORT OF MOTION TO DISMISS OR STAY
No. 10 CV 2261 MMA AJB

\\\LA - 036745/000011 - 482836 v1

1. relationship between the caller and the consumer. RJN, Ex. 1, p. 2. The proposed new consent rule drew an avalanche of comments from government agencies, industry associations, trade groups, private businesses, and members of Congress who explained that the proposed new rule would be untenable if applied to debt collectors and other non-telemarketing businesses. Many of these commentators urged the FCC to address this problem with the proposed rule by clarifying that the TCPA's restrictions do not apply to debt collection calls, or revising its interpretation of "automatic telephone dialing system" so as to exclude predictive dialers used by debt collectors and non-telemarketers. *See, e.g.,* RJN, Ex. 8, DEPARTMENT OF EDUCATION COMMENTS ON PROPOSED CHANGES TO FCC REGULATIONS, p.2; RJN, Ex. 9, COMMENT TO PROPOSED AMENDMENTS TO THE TELEPHONE CONSUMER PROTECTION ACT REGULATIONS, DEPARTMENT OF THE TREASURY, pp. 1-2; RJN, Ex. 10, ACA INTERNATIONAL'S COMMENT TO THE PROPOSED AMENDMENTS TO THE TCPA REGULATIONS, pp. 4-23, 60-63; RJN, Ex. 11, COMMENTS OF THE NATIONAL RETAIL FEDERATION, pp. 2-3; RJN, Ex. 12, December 3, 2010 Letter to the FCC from Rep. Jim Matheson, et. al., p. 2; RJN, Ex. 13, COMMENTS OF JP MORGAN CHASE & CO., pp. 17-20; RJN, Ex. 14, COMMENTS OF THE FINANCIAL SERVICES ROUNDTABLE, THE AMERICAN BANKERS ASSOCIATION, AND THE CONSUMER BANKERS ASSOCIATION, pp. 25-28;  RJN, Ex. 10, ACA COMMENTS, pp. 52-57; RJN, Ex. 11, NAT'L RETAIL FED. COMMENTS, p. 3; RJN, Ex. 15, COMMENTS OF WELLS FARGO & CO., pp. 19-21. *See also* Midland's Memorandum of Points and Authorities in support of Motion to Dismiss or Stay ("Midland Memo"), pp. 7:24-9:9.

Regarding these comments, Plaintiff dismissively asks, "But what does any of that have to do with this action?"  Opp., p. 8:20 – 21. The answer is simple: Federal agencies, such as the FCC, are <u>required</u> to address "significant comments," *i.e.*, "those which raise relevant points and which, if adopted, would require a change in the agency's proposed rule," in connection with their rulemaking activities. *American Mining Congress v. EPA*, 965 F.2d 759, 771 (9th Cir. 1992) (citing *Home Box Office, Inc. v. FCC*, 567 F.2d 9, 35 (D.C. Cir. 1977) ("the opportunity to comment is meaningless unless the agency responds to significant points raised by the public")); *see also Navistar Int'l Transp. Corp. v. U.S. E.P.A.*, 941 F.2d 1339, 1359 (6th Cir. 1991) ("an administrative agency ….must 'respond in a reasoned manner to the comments received, to

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

\\\LA - 036745/000011 - 482836 v1

- 4 -

REPLY IN SUPPORT OF MOTION TO DISMISS OR STAY
No. 10 CV 2261 MMA AJB

explain how the agency resolved any significant problems raised by the comments, and to show how that resolution led the agency to the ultimate rule.'") (internal citations omitted). Here, a wide array of entities have commented that if the FCC does not clarify the scope of the TCPA and/or the definition of "automatic telephone dialing system", the proposed new consent rule will seriously harm non-telemarketing businesses who rely on predictive dialers (including debt collectors who rely on this technology to ensure compliance with statutory restrictions on telephone calls to consumers). The FCC will almost certainly address these comments when it acts on the NRPM later this year.[5]

### B. This Is The Type Of Case Which Courts Regularly Stay Or Dismiss On Primary Jurisdiction Grounds

As explained in the instant motion – and as Plaintiff does not dispute – courts regularly dismiss or stay, on primary jurisdiction grounds, cases (like this one) that involve issues that are before a federal agency in connection with a pending rulemaking proceeding. *See, e.g., Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (affirming dismissal of class action complaint because issues raised therein were the subject of a pending FCC rulemaking proceeding); *Southwestern Bell Telephone L.P. v. Vartec Telecom, Inc.*, 2005 WL 2033416, *4 (E.D. Mo. 2005) (same); *Southern New England Telephone Co. v. Global NAPS, Inc.*, 2005 WL 2789323, *6 (D. Conn. 2005) (staying claims under doctrine of primary jurisdiction where a recent FCC ruling and NPRM "demonstrate that these issues are very much in flux and currently

---

[5] Plaintiff protests at length that a stay makes no sense here because if the FCC's proposed rule requiring express written consent for auto-dialed telephone calls is adopted, Midland would have a more difficult burden establishing a defense based on consent. Opp., pp. 7:5-8:6. This is wrong. If adopted, the proposed rule would be prospective; it would not invalidate existing consents and thereby expose companies who have complied with the FCC's prior consent rules to retroactive liability. *See* 5 U.S.C. § 551(4) (defining "rule" promulgated by an administrative agency as "an agency statement of general or particular applicability and future effect."). In any event, Midland is not arguing that the FCC's final decision on the issue of whether consent must be in writing or not would impact this case (which of course it wouldn't since it wouldn't be retroactive). The important point is that in ruling on the proposed new rule to require written consent, the FCC will have to address other issues and make certain clarifications – *i.e.*, the application of the TCPA to debt collectors and the definition of "automatic telephone dialing system" – that <u>do</u> impact this case and can have retroactive effect.

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

REPLY IN SUPPORT OF MOTION TO DISMISS OR STAY
No. 10 CV 2261 MMA AJB

\\\LA - 036745/000011 - 482836 v1

being considered by the FCC"); *Kappelman v. Delta Airlines, Inc.*, 539 F.2d 165, 171 (D.C. Cir. 1976) (doctrine of primary jurisdiction invoked where, among other things, there was an ongoing rulemaking proceeding on the general subject of the plaintiffs' complaint).

Although Plaintiff contends that the primary jurisdiction doctrine is not applicable here because this is a "garden variety" TCPA case that does not involve an issue of first impression, this is a red herring. Opp., p. 4:18-21. First, TCPA law is not as entrenched Plaintiff makes it out to be. Most TCPA cases are class actions that settle prior to any adjudication of the merits, so there is actually very little definitive case law on what types of equipment fall within the TCPA's autodialer restrictions. In any event, Plaintiff concedes – as he must –that an issue of first impression is not required in every case. To the contrary, "no fixed formula" exists for applying the doctrine of primary jurisdiction. *Clark*, 523 F.3d at 1115. "In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Kappelman*, 539 F.2d at 169; *see also Charvat v. Echostar Satellite, LLC*, --F.3d --, 2010 WL 539875 (6th Cir., Dec. 30, 2010) (collecting cases where courts have deferred to federal agencies on primary jurisdiction grounds, and noting that "'[T]he outstanding feature of the doctrine is . . . its flexibility permitting . . . courts to make a workable allocation of business between themselves and the agencies.'") (quoting *Civil Aeronautics Bd. V. Modern Air Transp., Inc*., 179 F.2d 622, 625 (2d Cir. 1950)). The purpose of the doctrine is to protect agencies possessing "quasi-legislative powers" that are "actively involved in the administration of regulatory statutes." *Clark*, 523 F.3d at 1115. Thus, abstention on primary jurisdiction grounds is appropriate where the case involves the resolution of a "particularly complicated issue that Congress has committed to a regulatory agency." *Clark*, 523 F.3d at 1114.

Deference to the FCC under the doctrine of primary jurisdiction is appropriate here. The issues currently before this Court and before the FCC regarding are complex ones that require the technical and policymaking expertise possessed by the FCC. As the Sixth Circuit found in a recent case referring a question of TCPA interpretation to the FCC:

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

REPLY IN SUPPORT OF MOTION TO DISMISS OR STAY
No. 10 CV 2261 MMA AJB

\\\LA - 036745/000011 - 482836 v1

> The agency has comparative expertise on the matter. The agency, no surprise, is familiar with the regulations it prescribed . . . . and possesses expertise over the statute it implements . . . , whether that expertise comes in the form of technical experts, agency lawyers or agency staff in a position to obtain input from relevant stakeholders.

*Charvat*, -- F.3d --, 2010 WL 5392875 at *7.

Likewise here, the FCC has previously issued rulings relating to the scope of the TCPA and the types of equipment that fall within the statute's restrictions. It has expertise regarding the types of automatic dialing technology used by various industries, and the record before the FCC in connection with the currently pending NPRM includes evidence regarding the functionality, capability, and uses of automatic dialing technology in the everyday operations of non-telemarketing businesses. *See, e.g.,* RJN Ex. 16, pp. 25-31; *see also* Midland Memo at 10-11.

Moreover, regulatory and policymaking expertise is required to address the issues raised in this case. In issuing its rules, the FCC must take into account the impact the rules will have across a wide range of businesses and industries, and balance the competing policy concerns. The FCC must also take into account overlapping regulatory schemes that place other restrictions on the activities of industries subject to the TCPA – for example, debt collectors rely on automatic dialing systems to comply with strict liability statutes like the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and similar state statutes that, among other things, govern the telephone activities of debt collectors and authorize severe penalties for misdialed numbers or incorrectly timed calls. It is precisely because these technical and policy issues have such broad implications that they should be decided by the FCC on an industry-wide basis, based on a developed administrative record, and not in a "garden variety" TCPA case.

Plaintiff also suggests that deference to the FCC is inappropriate here because the definition of "automatic telephone dialing system" is set out in statutes and regulations, and all the Court needs to do is consider expert testimony about the functionality of Midland's system and determine whether it fits the statutory definition. But the mere fact that an action involves the interpretation of a statute does not mean that it should not or cannot be stayed on primary jurisdiction grounds. To the contrary, it is not uncommon for courts to defer to administrative agencies – such as the FCC – on questions regarding the interpretation of statutes and regulations,

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

REPLY IN SUPPORT OF MOTION TO DISMISS OR STAY
No. 10 CV 2261 MMA AJB

\\\LA - 036745/000011 - 482836 v1

1  especially where the agency has a history of ruling on the issue in question, as the FCC does here.
2  *See, e.g., Charvat*, 2010 WL at *5-8 (invoking primary jurisdiction doctrine and referring to the
3  FCC the issue of whether a company on whose behalf telemarketing calls were placed by a third
4  party could be liable under the TCPA); *Michal Communications, Inc. v. Sprint Telemedia, Inc.*, 1
5  F.3d 1031 (10th Cir. 1993) (staying lawsuit pending FCC resolution of statutory interpretation
6  issue, where the issue involved "the appropriate characterization of a specific and relatively new
7  service, in a rapidly changing industry," which had already been the subject of a number of orders
8  and rulings by the FCC). This makes sense since "[t]he main justifications for the rule of primary
9  jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of
10 a statute or regulation." *Waudby v. Verizon Wireless Services, LLC*, 2007 WL 1560295, *4 (D.
11 N.J. 2007).

12     Finally, Plaintiff's melodramatic concern that this action would be stayed indefinitely
13 pending the resolution of the NPRM – as well as any hypothetical NPRMs which might arise in
14 future – is without basis. The NPRM in question was issued in January 2010. The comment
15 period closed nine months ago. The rulemaking process is not just beginning; it is almost at its
16 end. The FCC will almost certainly rule this year. Moreover, Plaintiff's argument, taken to its
17 logical conclusion, would prevent <u>any</u> court from <u>ever</u> staying an action pending an
18 administrative rulemaking, since one could always hypothesize that additional rulemaking
19 proceedings could follow the original one. Yet, as noted above, courts regularly dismiss or stay
20 actions on primary jurisdiction grounds pending the resolution of rulemaking proceedings. *See,*
21 *e.g., Clark*, 523 F.3d at 1115-1116; *Southwestern Bell*, 2005 WL 2033416 at *4; *Southern New*
22 *England Telephone Co.*, 2005 WL 2789323 at *6; *Kappelman*, 539 F.2d at 171.

23     In sum, abstention under the primary jurisdiction doctrine is appropriate here. The
24 "traditional factors" laid out in *Clark* are met. *See Clark*, 523 F.3d at 1114. This case will
25 require the court to resolve an issue – whether predictive dialers are "automatic telephone dialing
26 systems" under the TCPA – that has been placed by Congress in the jurisdiction of the FCC. *See*
27 47 U.S.C. § 151 (granting the FCC authority to "execute and enforce" the provisions of the
28 Federal Communications Act, which includes the TCPA); 47 U.S.C. § 227 (charging the FCC

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

REPLY IN SUPPORT OF MOTION TO DISMISS OR STAY
No. 10 CV 2261 MMA AJB

\\\LA - 036745/000011 - 482836 v1

with administration of the TCPA). The TCPA is a statute that subjects a company's activities to a comprehensive regulatory authority that requires expertise or uniformity in administration. If the FCC issues a ruling on the definition of "automatic telephone dialing system," that rule will apply to all industries where automatic dialing systems are used, and it will have been made after careful consideration of myriad technical and policy issues that the FCC is uniquely situated to address. Because a conflicting ruling by this Court would create legal uncertainty and potentially undermine the regulatory process, this is a classic case where a dismissal or stay is appropriate.

### III. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED UNDER FRCP 12(b)(6)

Even if the Court elects to allow this case to go forward, Plaintiff's complaint should be dismissed because he has failed to satisfy the pleading requirements established by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), as he has not alleged sufficient factual information about the alleged calls (such as how many were made, when they were made, or what account they were in reference to) to provide Midland with fair notice of the grounds for his claim and the basis upon which he is allegedly entitled to relief. Such information is particularly necessary since Plaintiff is seeking between $500 and $1500 per call, yet his complaint gives no hint of how many calls are at issue. *See, e.g., Abbas v. Selling Source, LLC,* 2009 WL 4884471, *2 (N.D. Ill. 2009) (fair notice to defendant required pleading of specific facts regarding alleged text messages where plaintiff sought recovery for each violation of the TCPA).

The lack of specific facts in the complaint presents a real practical problem: Midland has no record of Plaintiff's cell phone number in its system, so without additional information, Midland cannot investigate whether or not the alleged calls were made to Plaintiff, or admit or deny the allegations in Plaintiff's complaint. Before filing this motion, Midland attempted to obtain additional information that would allow it to search for Plaintiff in its system, however Plaintiff's counsel has not been able to provide any such information. Instead, Plaintiff cavalierly suggests that Midland should simply deny the allegations in the complaint and proceed to discovery – including, apparently, an expert examination of Midland's telephone system. Before

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

REPLY IN SUPPORT OF MOTION TO DISMISS OR STAY
No. 10 CV 2261 MMA AJB

\\\LA - 036745/000011 - 482836 v1

1  proceeding with costly and invasive technical discovery, Plaintiff should at minimum be required
2  to file a complaint that provides proper notice of the factual basis for his claims against Midland.
3      *Abbas* is directly on point, and it holds that fair notice of an alleged violation of the TCPA
4  requires a plaintiff to plead basic facts such as when the offending messages or calls were made,
5  what they stated, and the numbers from which they were received.  2009 WL 4884471, *2. As
6  Plaintiff's complaint is devoid of these required basic facts, it lacks "sufficient factual matter" to
7  state a claim.  *Id.*; *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1949.  None of the cases
8  Plaintiff cites compel a different result because none of them address the specific facts a plaintiff
9  must plead in order to provide fair notice of the basis for a TCPA claim.  *See, e.g., Kazemi v.
10 Payless Shoesource, Inc.*, 2010 WL 963225 (N.D. Cal. 2010) (addressing whether text messages
11 were "calls" under the TCPA); *Reyes v. Saxon Mortgage Services, Inc.*, 2009 WL 3738177 (S.D.
12 Cal. 2009) (defendant argued that plaintiff failed to state a claim because plaintiff had consented
13 to receive calls from defendant; no issue of whether plaintiff sufficiently pled facts regarding the
14 telephone calls to give defendant fair notice of the claim); *Brown v. Hosto & Buchanan, PLLC*,
15 2010 WL 4352932 (W.D. Tenn. 2010) (no contention that insufficient facts were alleged to allow
16 a response); *Kramer v. Autobytel, Inc.*, 2010 WL 5463116 (N.D. Cal. 2010) (where complaint
17 alleged that mass unsolicited text messages were sent from defendant's SMS code, plaintiff was
18 not required to plead the time and context of every message).  Accordingly, Plaintiff's claim
19 should be dismissed under FRCP 12(b)(6).

20 **IV.     CONCLUSION**

21      For the foregoing reasons, Midland respectfully requests that the Court grant Midland's
22 motion and dismiss or stay this case pending the FCC's ongoing rulemaking proceeding or, in the
23 alternative, dismiss this case for failure to state a claim under F.R.C.P. 12(b)(6).

24 Dated: January 31, 2011                HOGAN LOVELLS US LLP

25                                        By: /s/
26                                            Amy M. Gallegos

27                                        Attorneys for Defendant
                                          Midland Funding, LLC
28

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

REPLY IN SUPPORT OF MOTION TO
DISMISS OR STAY
No. 10 CV 2261 MMA AJB

\\\LA - 036745/000011 - 482836 v1